IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED NATIONAL INSURANCE COMPANY, et al. | : | CIVIL ACTION |
| v. | : | |
| INDIAN HARBOR INSURANCE COMPANY | : | NO. 14-6425 |

MEMORANDUM

Bartle, J. February 2, 2015

Plaintiffs United National Insurance Company ("UNIC") and Penn-America Insurance Company ("Penn-America") are both insurance companies which were insured by defendant Indian Harbor Insurance Company ("Indian Harbor"). Together UNIC and Penn-America have sued Indian Harbor in this diversity action for breach of contract, breach of duties, waiver, estoppel, and reformation of the policies issued to them by Indian Harbor (the "Indian Harbor policies") in connection with three underlying coverage disputes involving plaintiffs' insureds. Plaintiffs seek compensatory damages stemming primarily from defense costs and/or settlement payments made in connection with these underlying disputes. Indian Harbor has filed an answer and counterclaim against plaintiffs as well as a third-party claim against Diamond State Insurance Company.

Before the court are two motions filed by Indian Harbor. The first is its motion to dismiss Counts I, II, and III of the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure insofar as these counts relate to one underlying coverage dispute involving UNIC and to dismiss Count IV of the complaint in its entirety. The second is the motion of Indian Harbor to strike plaintiffs' jury demand as to certain counts of the complaint. Since Indian Harbor has filed an answer, we will consider its partial motion to dismiss under Rule 12(b)(6) as a motion for partial judgment on the pleadings under Rule 12(c). See Turbe v. Gov't of V.I., 938 F.2d 427, 428 (3d Cir. 1991).

I.

A motion filed pursuant to Rule 12(b)(6) by a defendant who has also filed an answer is properly construed as a motion for judgment on the pleadings pursuant to Rule 12(c). See Turbe, 938 F.2d at 428. The standard for evaluating a Rule 12(c) motion "is the same as the familiar standard used for evaluating a motion to dismiss under Rule (12(b)(6)." Accurso v. Infra-Red Servs., Inc., 23 F. Supp. 3d 494, 499 (E.D. Pa. 2014) (internal citations omitted). Accordingly, "the distinction between a motion under 12(b)(6) and a motion under 12(c) 'is purely formal.'" Id. (quoting Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990)).

As discussed above, the standard used for a Rule 12(b)(6) motion guides our determination. When ruling on a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. Planco Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008). We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In making our determination, we may also consider matters of public record as well as any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

In order to survive a Rule 12(b)(6) motion to dismiss, a claim must do more than raise a "mere possibility of misconduct." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679). Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Instead, the complaint must

contain factual matter sufficient to state a claim that is facially plausible, meaning that "the plaintiff [has] plead[ed] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which "pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility.'" Id. (citing Twombly, 550 U.S. at 557).

II.

The facts set forth in the complaint or otherwise subject to the cognizance of the court at this stage are taken in the light most favorable to plaintiffs. Plaintiffs UNIC and Penn-America are insurance companies which issue various types of insurance policies, including general liability coverage and real estate pollution coverage, in various states. Defendant Indian Harbor, itself an insurance company, issued policies providing plaintiffs with basic "all risk" coverage with exclusions. In all material respects, the language in the policies appears to be the same, except for the time periods involved.

According to their complaint, UNIC and Penn-America became embroiled in three coverage disputes with their respective insureds while the Indian Harbor policies insuring UNIC and Penn-America were in effect. Two of these underlying disputes, denominated the "Peccadillo's suit" and the "Jackson suit," arose between Penn-America and its insureds and concerned coverage for dram shop liability. Indian Harbor has not moved to dismiss the complaint insofar as it relates to these two disputes.

One of the motions now before us seeks dismissal of the complaint insofar as it relates to the third underlying dispute (the "Port LA action") which arose between UNIC and one of its insureds, Port LA Distribution Center, L.P. ("Port LA"). In 2008, Port LA filed a lawsuit in the Superior Court of California for the County of Los Angeles (the "Port LA complaint") against UNIC stemming from a dispute over UNIC's partial denial of coverage. According to the Port LA complaint,[1] Port LA had in 2001 purchased from Gaffey Street Ventures, LLC ("Gaffey Street") several pieces of real estate (collectively the "Port LA site"). This real estate had previously housed an oil refinery, agricultural and storage operations, and a scrap

1. The Port LA pleading in issue is actually the second amended complaint in that state court action. For ease of reference we will simply refer to it as "the complaint" or "the Port LA complaint."

metal facility.  It was also adjacent to other industrial sites.
At the time Port LA purchased the Port LA site, that property
had been the subject of regulatory proceedings related to soil
and groundwater contamination for approximately sixteen years.
UNIC, as Port LA's insurer, had been provided with information
about the alleged contamination, including an underwriting
summary which identified petroleum and other chemical
contamination of the soil and groundwater at the Port LA site.

In 2007, petroleum-related chemicals were detected in
the groundwater at the Port LA site.  As a result, the Los
Angeles Regional Water Quality Control Board (the "Los Angeles
Regional Board") directed Port LA to undertake certain cleanup
work.  Port LA turned to UNIC to recover what UNIC now
characterizes as "certain costs arising from" the Los Angeles
Regional Board's request.  UNIC partially denied coverage for
the costs.  It took the position that the work required by the
Los Angeles Regional Board in connection with the 2007 discovery
of contaminants was excluded from the coverage for which it
insured Port LA because said work did not constitute the
"cleanup costs" covered by the policy it had issued to Port LA
(the "Port LA policy").

In response to the denial of coverage, Port LA, as
noted above, filed suit against UNIC in state court in
California.  Upon receipt of Port LA's complaint, UNIC notified

its insurer, Indian Harbor, of the lawsuit.  UNIC apparently took the position that the suit fell within the scope of the Indian Harbor policies.  Indian Harbor did not provide any response for several years even though UNIC provided Indian Harbor with regular updates about the lawsuit.

UNIC successfully defended itself against Port LA's state court lawsuit against it.  UNIC then "tendered the defense fees relating to the Port LA Suit to Indian Harbor and sought reimbursement of all fees in excess of the $1,000,000.00 self-insured retention in the Indian Harbor Policy."  Indian Harbor refused to compensate UNIC for the latter's defense costs and in doing so relied on an exclusion for certain pollution-related claims (the "pollution exclusion") contained in the Indian Harbor policies.  The instant lawsuit is a response to that refusal.

At issue for present purposes is whether the costs incurred by UNIC in defending against the Port LA lawsuit fell within the scope of the policies issued by Indian Harbor to UNIC and Penn-America.  Part I of those policies sets forth a description of Indian Harbor's "all risk" coverage:  "The Insurer will pay on behalf of the **Insured Loss** from **Claims** first

made against the **Insured** during the **Policy Period** . . . for **Wrongful Acts** . . . ."[2]

The term "Loss" as used in the Indian Harbor policies was defined in relevant part as follows:

> "**Loss**" means damages, judgments, awards, settlements, and the **Defense Expenses** which an **Insured** is legally obligated to pay as a result of a **Claim**.

The term "Claim" was defined by the Indian Harbor policies to include, among other things, "any civil proceeding in a court of law or equity, including any mediation or alternative dispute resolution ordered or sponsored by such court." "Claim" also applied to "a written demand or notice to an **Insured** indicating that a person or entity intends to hold an **Insured** responsible for a **Wrongful Act**."

The Indian Harbor policies contained a number of exclusions from coverage. Among these was an exclusion (the "pollution exclusion") which provided in relevant part:

> The Coverage under this Policy does not apply to any **Claim**:
>
> . . .
>
> based on or directly or indirectly arising out of or resulting from:

2. It appears that Indian Harbor used bold text in some parts of the policies to set apart terms and phrases that were defined therein. To the extent that we quote from the policies, all bold text in this opinion appears in the policies and has not been added by the court.

(1)   any actual, alleged or threatened
      exposure to, or generation, storage,
      transportation, discharge, emission,
      release, dispersal, escape, treatment,
      removal, or disposal of any smoke,
      vapors, soot, fumes, acids, alkalis,
      toxic chemicals, liquids or gases,
      waste materials (including materials
      which are intended to be or have been
      recycled, reconditioned or reclaimed),
      or other irritants, pollutants or
      contaminants;

. . .

(3)   any regulation, order, direction, or
      request to test for, monitor, clean up,
      remove, contain, treat, detoxify, or
      neutralize any of the foregoing or any
      action taken in contemplation or
      anticipation of any such regulation,
      order, direction, or request; or
(4)   any dispute over the existence or
      absence of, or particular terms,
      conditions or amount of, insurance
      coverage for any matter described in
      [the previous sections of the pollution
      exclusion].

It is UNIC's position that the Indian Harbor policy
insuring it entitled it to coverage for its losses, that is, its
defense expenses, stemming from the Port LA action.  The essence
of the complaint filed in that underlying action was that UNIC
was required to compensate Port LA for certain pollution testing
and cleanup expenses under the terms of the policy issued by
UNIC to Port LA.

III.

We turn first to Indian Harbor's arguments that it is entitled to judgment on the pleadings insofar as UNIC's claim of breach of contract in Count I of the complaint relates to the Port LA action. Indian Harbor maintains that the breach of contract claim cannot proceed because the clear language of the pollution exclusion in the policies it issued to UNIC exempts it from any obligation to compensate UNIC for its defense costs in that underlying lawsuit. UNIC counters that the pollution exclusion is inapplicable. Alternatively, UNIC maintains that the pollution exclusion is ambiguous and should be construed in its favor.

It is well settled that courts must give effect to contract language that is clear and unambiguous. See, e.g., 401 Fourth St., Inc. v. Investors Ins. Grp., 879 A.2d 166, 171 (Pa. 2005). When the words of a contract are clear and unambiguous, courts are to ascertain the intent of the parties from those words, which are given their "commonly accepted and plain meaning." E.g., LJL Transp., Inc. v. Pilot Air Freight Corp., 962 A.2d 639, 647 (Pa. 2009). However, when a provision in an insurance contract is ambiguous – meaning that it is reasonably susceptible to more than one interpretation when applied to a particular set of facts – the ambiguity must be resolved in favor of the insured and against the insurer. E.g.,

Adamitis v. Erie Ins. Exch., 54 A.3d 371, 380 (Pa. Super. Ct. 2012) (internal citations omitted).

Pennsylvania courts have enunciated a clear standard for determining whether an insurer is subject to a defense obligation with respect to its insureds. In order to make such a determination, we must "compare the allegations in the [underlying] complaint with the provisions of the insurance contract and determine whether, if the complaint allegations are proven, the insurer would have a duty to indemnify the insured." Unionamerica Ins. Co., Ltd. v. J.B. Johnson, 806 A.2d 431, 433 (Pa. Super. Ct. 2002). In the pending case, this standard requires us to compare the complaint filed by Port LA in the California Superior Court with the policies issued to UNIC by Indian Harbor and to determine whether the claims asserted by Port LA and any costs of defense by UNIC were encompassed within the terms of the Indian Harbor policies.

UNIC states in its complaint that it incurred expenses in connection with its defense against the lawsuit filed by Port LA. That lawsuit, according to UNIC, arose after UNIC denied coverage to Port LA for "costs arising from a request by [the Los Angeles Regional Board] to investigate the deep groundwater at the [Port] LA site." The Port LA complaint makes clear that the Los Angeles Regional Board's request resulted from the identification of possible pollutants in the soil and

groundwater at the Port LA site.  Thus, both the request and the ensuing dispute that resulted in Port LA's lawsuit were, in the words of the exclusion provision of the Indian Harbor policies, "based on or directly or indirectly arising out of or resulting from" either an "actual, alleged, or threatened exposure to or generation, storage, transportation, discharge, emission, release, dispersal, escape, treatment, removal, or disposal of" any of the pollutants listed in section (1) of the pollution exclusion or a "regulation, order, direction, or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize" any of said pollutants or "any action taken in contemplation or anticipation of any such regulation, order, direction, or request."  Moreover, it is clear that Port LA's lawsuit was a "claim" within the meaning set forth in the Indian Harbor policies because it was a "civil proceeding in a court of law or equity" as contemplated by section II(B)(1) of the policies.  The language of the pollution exclusion is clear and unambiguous.  Indian Harbor has no obligation to pay the costs which UNIC incurred in connection with the Port LA lawsuit and which it now seeks to recover.

UNIC urges that even if the pollution exclusion precludes coverage for costs related to Port LA's efforts to comply with the Los Angeles Regional Board's pollution cleanup request, coverage is not barred for UNIC's claims stemming from

Port LA's charges of wrongful claim handling. We are not persuaded. Again, the language of the pollution exclusion is broad. It extends to "any Claim . . . based on or directly or indirectly arising out of or resulting from" a host of possible occurrences relating to the regulation of pollution. (Emphasis added.) Port LA's allegations that UNIC engaged in wrongful claim handling constitute such an excluded claim. UNIC's alleged failure to investigate Port LA's expenditures relating to the Los Angeles Regional Board's request unquestionably was "based on or directly or indirectly arising out of or resulting from" the types of occurrences described in sections (1), (3), and (4) of the pollution exclusion. It is immaterial that the alleged wrongful conduct would, as UNIC avers, "be wrongful regardless of whether the substantive nature of the underlying coverage dispute had anything to do with whether pollution was covered." The fact of the matter is that the underlying dispute *did* have to do with whether pollution was covered. Accordingly, the costs "based on or directly or indirectly arising out of or resulting from" the claims in the Port LA lawsuit therefore fall squarely within the pollution exclusion.

UNIC contends that even if we deem the pollution exclusion unambiguous and applicable to the costs at issue here, the reasonable expectations doctrine should compel us to allow the breach of contract claim to move forward. UNIC draws our

attention to Pennsylvania cases which support the proposition that the parties' expectations are the proper focus in disputes concerning insurance contracts because such contracts "are not freely bargained between equals but are largely adhesive in nature." See Bishops, Inc. v. Penn Nat'l Ins., 984 A.2d 982, 989-90 (Pa. Super. Ct. 2009).  UNIC further argues that the reasonable expectations doctrine applies even to insurance contracts between sophisticated parties and that as a result we should apply it here.  It supports this contention by citing UPMC Health Systems v. Metro Life Insurance Company, 391 F.3d 497, 503-04 (3d Cir. 2004).  That case, in turn, makes reference to an earlier prediction made by our Court of Appeals in Reliance Insurance Company v. Moessner, 121 F.3d 895 (3d Cir. 1997), about whether Pennsylvania courts would apply the reasonable expectations doctrine to commercial insureds.  The Moessner court anticipated that Pennsylvania courts would hold that doctrine applicable even when the plaintiff was a sophisticated party to an insurance contract.  It noted that in such a situation an insurer could still "unilaterally alter[] the insurance coverage requested by the insured." Reliance Ins. Co., 121 F.3d at 905.  Even in transactions involving sophisticated insureds, the court stated, "the insured has a right to expect that [it] will receive something of comparable

value in return for the premium paid." Id. (internal citation omitted).

Nonetheless, UNIC's reliance on UPMC Health Systems and the cases upon which it is predicated is misplaced. There is no plausible basis in UNIC's complaint for any allegation that Indian Harbor has "unilaterally alter[ed] the insurance coverage" at issue. The concern raised by the UPMC Health Systems court in its extension of the doctrine to commercial parties is therefore not at issue here.

We find UNIC's reliance on Bishops similarly unavailing. There, the Pennsylvania Superior Court applied the reasonable expectations doctrine to a dispute over the applicability of a flood damage exclusion in a policy insuring a fabric manufacturer. The court found that certain changes made to the policy "foster[ed] a measure of ambiguity" with respect to the exclusion and might reasonably lead the insured to conclude that the exclusion had been eliminated. Bishops, 984 A.2d at 991-92. Here, in contrast, there was no such ambiguity.

UNIC next argues that, even if the pollution exclusion does encompass the expenditures it now seek to cover, its complaint is viable as it relates to the Port LA action because Pennsylvania law prevents insurance contracts from being construed in such a way as to render coverage illusory. Application of the pollution exclusion to its circumstances,

UNIC maintains, would render coverage under the Indian Harbor policies illusory so that the Port LA claim must therefore be covered by the policies.

The illusory coverage doctrine relied upon by UNIC applies when "the vast majority" of claims made under a particular insurance policy are likely to fall within an exclusion to that policy.  See Heller v. Pa. League of Cities & Municipalities, 32 A.3d 1213, 1223 (Pa. 2011).  There is nothing in the record to suggest such a situation.  Nowhere does UNIC's complaint allege any plausible facts that the "vast majority" of the claims made by UNIC to Indian Harbor are likely to be denied because of the pollution exclusion.  The coverage offered by the general "all risk" policy issued by Indian Harbor to UNIC encompasses a much broader universe of potential claims than those involving pollution.  Accordingly, UNIC's argument of illusory coverage fails.

In sum, accepting as true for present purposes the facts pleaded in UNIC's complaint or otherwise properly before the court as well as all reasonable inferences, we conclude that UNIC has failed to state a claim for breach of contract as to the Port LA dispute.  Indian Harbor is thus entitled to judgment on the pleadings in this regard on Count I of the complaint.

IV.

We next address UNIC's claim in Count II against Indian Harbor for breach of duties. UNIC alleges that Indian Harbor owed it a duty of care with regard to its handling of the Port LA action and that Indian Harbor breached this duty. UNIC points specifically to Indian Harbor's alleged failure properly to investigate UNIC's claim for costs relating to the Port LA action.

To the extent that UNIC alleges breach of duty, its claim seems to be grounded in an argument that Indian Harbor acted in bad faith by failing to investigate UNIC's claim relating to the Port LA action. Pennsylvania lacks a common law cause of action for bad faith on the part of insurers but maintains a statutory cause of action through 42 Pennsylvania Consolidated Statutes Annotated § 8371. See Romano v. Nationwide Mut. Fire Ins. Co., 646 A.2d 1228, 1231 (Pa. Super. Ct. 1994); see also Cecil Twp. Mun. Auth. v. N. Am. Specialty Surety Co., 836 F. Supp. 2d 367, 376-77 (W.D. Pa. 2011). Despite UNIC's apparent allusions to Indian Harbor's alleged bad faith, however, the complaint here has made no mention of § 8371. In any event, because we have determined that Indian Harbor had no contractual duty to provide coverage to UNIC in connection with the underlying Port LA action, Indian Harbor cannot have breached any duty in failing to investigate UNIC's

claim. See USX Corp. v. Liberty Mut. Ins. Co., 444 F.3d 192, 202 (3d Cir. 2006).

In its opposition to Indian Harbor's motion to dismiss, UNIC asserts for the first time that Indian Harbor is obligated, at the very least, to advance to UNIC the defense costs for the Port LA action until this court determines that the pollution exclusion applies. In support of this argument, Indian Harbor relies on two cases, both of which are inapposite. The first, Little v. MGIC Indem. Corp., 649 F. Supp. 1460 (W.D. Pa. 1986), involved a dispute over the applicability of an insurance contract which contained a policy provision for advancement of costs pending judicial resolution of claims disputes. The Little court, finding that provision ambiguous, construed it in favor of the insured and required the insurer to advance costs while the coverage dispute was pending. Id. at 1465. That case has no bearing on our assessment of the Indian Harbor policies. UNIC has cited no policy provision which could arguably be interpreted to require advancement of defense costs.

The second case relied upon by UNIC, Associated Electric & Gas Insurance Services, Ltd. v. Rigas, 382 F. Supp. 2d 685 (E.D. Pa. 2004), is similarly distinguishable. That case involved a dispute over an insurer's rescission of several directors' and officers' liability policies while its insureds were entangled in civil suits which had been brought against

them. Rigas, 382 F. Supp. 2d at 687. The insureds contended that the insurer was obligated to advance their defense costs while the rescission action was pending. The court agreed, citing authority for the proposition "that defense costs must be advanced pending the outcome of a rescission claim." Id. at 691. However, Rigas and the cases on which it relies all involved the rescission of contracts containing some provision for payment of defense costs. See id. at 691-92. The Rigas court identified in the contract before it ambiguity as to whether defense costs should be advanced and held that this ambiguity must be resolved in the insureds' favor and defense costs advanced pending the outcome of the rescission claim. Id. at 702. In contrast, UNIC has cited no provision in the Indian Harbor policies requiring the advancement of defense costs, nor has it identified any ambiguity in the Indian Harbor policies as to whether defense costs must be advanced. Rigas is thus inapplicable. Indian Harbor has not breached any duty in failing to advance to UNIC its defense costs for the Port LA action.

For the foregoing reasons, Indian Harbor is entitled to judgment in its favor on Count II of the complaint insofar as it concerns the Port LA action.

V.

Indian Harbor also seeks judgment on the pleadings with respect to UNIC's waiver and estoppel claims insofar as they relate to the Port LA Action. The complaint asserts that Indian Harbor "has waived or is estopped from" asserting various exclusions, terms, and conditions in the Indian Harbor policies in order to deny coverage for costs relating to the Port LA suit and other actions. Specifically, UNIC contends that Indian Harbor's failure even to acknowledge UNIC's submission of its claim until several years after receiving notice amounted to a waiver of the pollution exclusion in the Indian Harbor policies and any other basis for denial of the claim. UNIC also argues that Indian Harbor is estopped from denying UNIC coverage for costs relating to the Port LA suit because of Indian Harbor's silence with respect to UNIC's claim.

Pennsylvania courts characterize waiver as "a voluntary and intentional abandonment or relinquishment of a known right." E.g., Samuel J. Marranca Gen. Contracting Co., Inc. v. Amerimar Cherry Hill Assocs. Ltd. P'ship, 610 A.2d 499, 501 (Pa. Super. Ct. 1992). In order to state a claim for waiver of a legal right, a plaintiff must show that the party against whom waiver is to be asserted committed a "clear, unequivocal and decisive act." Commonwealth ex rel. Corbett v. Griffin, 946 A.2d 668, 679 (Pa. 2008). Significantly, waiver under

Pennsylvania law may be express or implied but is "essentially a matter of intention." Brown v. City of Pittsburgh, 186 A.2d 399, 401 (Pa. 1962). If waiver is not intended by the party against whom waiver is to be asserted, it will not be implied, unless the party asserting waiver has been misled to its prejudice. Id.; see also Berwick v. Daniel W. Keuler Realtors, Inc., 595 A.2d 1272, 1274 (Pa. Super. Ct. 1991).

UNIC, however, has pleaded no facts which taken as true plausibly demonstrate that Indian Harbor's silence constituted a knowing and voluntary relinquishment of a known right. See Samuel J. Marranca Gen. Contracting Co., Inc., 610 A.2d at 501. Nor does the complaint identify a "clear, unequivocal and decisive act" of Indian Harbor supportive of a finding of waiver. See Griffin, 946 A.2d at 679. Although unintentional waiver may be established upon a showing that the party asserting it has been misled to its prejudice, see, e.g., Brown, 186 A.2d at 401, UNIC has not pleaded any such facts, that is, that UNIC was misled to its prejudice by Indian Harbor's silence. To the contrary, UNIC, according to the complaint, was well aware of Indian Harbor's silence and took steps to defend itself in light of that silence. Clearly UNIC was not misled. The waiver claim simply cannot survive a motion for judgment on the pleadings insofar as said claim relates to the Port LA action.

The complaint, as noted above, also alleges estoppel. To state a claim for estoppel under Pennsylvania law, a plaintiff must allege "1) misleading words, conduct, or silence by the party against whom estoppel is asserted; 2) unambiguous proof of reasonable reliance upon the misrepresentation by the party asserting the estoppel; and 3) lack of duty to inquire on the party asserting the estoppel." Chester Extended Care Ctr. v. Commonwealth Dep't of Pub. Welfare, 586 A.2d 379, 382 (Pa. 1991). Significantly, the doctrine of estoppel cannot enlarge insurance coverage unless the insurer undertook conduct which induced the insured to take or neglect to take some action to its prejudice. See Wasilko v. Home Mut. Cas. Co., 232 A.2d 60, 63 (Pa. Super. Ct. 1967).

Again, the complaint is void of any plausible information that UNIC reasonably relied upon a misrepresentation by Indian Harbor in its handling of the Port LA action. See Chester Extended Care Ctr., 586 A.2d at 382. UNIC pleads that Indian Harbor "induced UNIC to believe that Indian Harbor would provide coverage . . . and UNIC acted in reasonable reliance on that belief, to UNIC's detriment." It also alleges that as a result of Indian Harbor's silence "UNIC . . . did not take steps which it could have taken had Indian Harbor issued a reservation of rights and/or provided its coverage determination in a timely fashion (including, inter alia, to request allocation of its

defense expenses by claim)." Again, UNIC took steps to defend itself based on Indian Harbor's silence and in fact prevailed against Port LA. UNIC has not plausibly alleged detrimental reliance on Indian Harbor's silence or failure to act. See Wasilko, 232 A.2d at 63. UNIC's estoppel claim pertaining to the Port LA action consists of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." See Iqbal, 556 U.S. at 578. Accordingly, insofar as the estoppel claim contained in Count III relates to the Port LA action, we will enter judgment on the pleadings in favor of Indian Harbor.

VI.

This brings us to Indian Harbor's motion for judgment on the pleadings with respect to plaintiffs' claim for reformation of the Indian Harbor policies.[3] Count IV of the complaint seeks modification of the Indian Harbor policies to make clear that they "fully cover Claims for Plaintiffs' actual or alleged acts, errors, omissions, misstatements, breaches of duty or wrongful acts in the handling of claims under pollution

3. As discussed above, though Indian Harbor has moved to dismiss Counts I, II, and III only insofar as they relate to the Port LA action, it has moved to dismiss Count IV in its entirety. We note that Count IV appears to seek only contract modifications that would affect the applicability of the Indian Harbor policies to pollution claims. As a result, it seems that only the Port LA dispute has any bearing on our consideration of UNIC's reformation claim.

liability policies." Indian Harbor responds that the reformation count fails as a matter of law because UNIC has failed to plead facts constituting mutual or unilateral mistake.

Pennsylvania law permits contract reformation upon a showing of either mutual mistake or unilateral mistake. E.g., Regions Mortg., Inc. v. Muthler, 844 A.2d 580, 582 (Pa. Super. Ct. 2004). Mutual mistake occurs when "both parties to a contract [are] mistaken as to existing facts at the time of execution." Zurich Am. Ins. Co. v. O'Hanlon, 968 A.2d 765, 770 (Pa. Super. Ct. 2009) (internal citation omitted). If a party is seeking reformation on the basis of unilateral mistake, however, it must plead "that the party against whom reformation is sought had such knowledge of the mistake as to justify an inference of fraud or bad faith." Regions Mortg., Inc., 844 A.2d at 582 (citing Dudash v. Dudash, 460 A.2d 323, 327 (1983)). Parties raising allegations of fraud or mistake in a pleading must do so with particularity. Fed. R. Civ. P. 9(b); see also, e.g., Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993).

The allegations in the complaint are insufficient to state a claim for reformation under Pennsylvania law. The allegations contained in Count IV merely recite the elements of a claim for reformation. A reformation claim, however, may survive only when pleaded with particularity under Rule 9(b) of

the Federal Rules of Civil Procedure. The complaint lacks particularity in support of any reformation. There are no specific facts recited about mutual mistake. Nor does the complaint recite specific facts about any unilateral mistake by UNIC or about any knowledge on Indian Harbor's part of any such unilateral mistake. Indian Harbor's motion for judgment on the pleadings will therefore be granted as to Count IV.

VII.

Finally, Indian Harbor has moved to strike plaintiffs' jury demand for Count III of the complaint as it relates to the Port LA action[4] and for Count IV of the complaint. Since we have determined that Count III fails as it relates to the Port LA action and Count IV fails in its entirety, Indian Harbor's motion to strike plaintiffs' jury demand will be denied as moot.

4. Count III of plaintiffs' complaint asserts waiver and estoppel with respect to the Peccadillos suit and the Port LA action. Indian Harbor seeks to strike the jury demand for Count III as it relates to the Port LA action but makes no mention of Count III's application to the Peccadillos Suit.